**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ANATOLII LEGKODYMOV | )<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 2:25-mc-123

United States Magistrate Judge
Christopher B. Brown

## <u>OPINION AND CERTIFICATION</u>

Pending before the Court is a Complaint filed by the United States upon a request by France for the extradition of Anatolii Legkodymov, in accordance with 18 U.S.C. § 3184.  ECF No. 2.  In it, the Government alleges that all of the requirements for Mr. Legkodymov's arrest and subsequent extradition have been met.  Namely, that an extradition treaty exists between the United States and France, that France has formally requested Mr. Legkodymov be arrested and extradited from the United States in order to face prosecution for pending criminal charges, that the treaty authorizes his provisional arrest pending an extradition hearing, that the pending charges are extraditable offenses under the treaty, and that there is probable cause the charges were committed by him.  *Id.*

For the reasons that follow, the Court finds there is sufficient evidence to establish probable cause of the criminal offenses charged, that these offenses fall within the treaty, and therefore Mr. Legkodymov's extradition is warranted.

1

## I.    Procedural Background

On December 20, 2024 the Embassy of France submitted a formal request to the United States for Mr. Legkodymov's extradition.  ECF No. 2-1 at 4-5.  Attached to that request is an arrest warrant issued on July 29, 2024 by Mr. Serge Tournaire, senior vice-president in charge of the investigation at the Paris Judicial Court, related to Mr. Legkodymov's alleged involvement in a money laundering conspiracy. *Id. at* 120-23.  Documents establish that Mr. Legkodymov is charged with the following violations of French penal code: 1) complicity in fraudulent access and maintenance of an automated data processing system; 2) conspiracy to fraudulently introduce data into an automated data processing system; 3) conspiracy to fraudulently modify data contained in an automated data processing system; 4) conspiracy to hinder the operation of an automated data processing system; 5) complicity in organised extortion; 6) criminal conspiracy to commit a felony or offence punishable by at least 5 years' imprisonment; 7) conspiracy to breach a state-operated automated personal data processing system, committed by an organised gang; and 7) laundering of crimes or offences committed by an organised gang.  *Id.* at 120-21.  According to these documents he is alleged to have committed these offenses in France as well as other countries between 2017 through 2023.  *Id.* at 126.

Upon receiving this request the United States filed a Complaint on February 10, 2025 which requested the arrest of Mr. Legkodymov, a Russian citizen,[1] who was detained at an immigration facility in the Western District of Pennsylvania. ECF No. 2. The Complaint alleged there is a treaty in place between the United States and France which authorized his arrest.[2] *Id.* Indeed, Article 13 of the Treaty between the United States and France authorizes the provisional arrest and detention of one accused of having committed an "extraditable offense" (as defined by Article 2 as "acts" punishable for a maximum of at least one year or more imprisonment) pending a formal request for extradition, as is the case here. ECF No. 2-1 at 13, 23. Accordingly, Mr. Legkodymov was subsequently arrested pending extradition proceedings. ECF Nos. 2, 4, 5.

Mr. Legkodymov had his initial appearance on February 25, 2025 and was detained. ECF Nos. 12-13. After a substitution of counsel (ECF No. 14), some briefing by the parties (ECF Nos. 18, 19, 23), and a continuance (ECF No. 21), an extradition hearing was held on June 25, 2025. ECF No. 24.

The Court has now considered the Complaint – which includes among other things the Extradition Treaty and the formal request for extradition submitted by

---

[1]    The Complaint alleges that Mr. Legkodymov is a national of Russia, St. Kitts, and also holds a Chinese visa. ECF No. 2.

[2]    A copy of the Extradition Treaty between the United States and France, U.S.-Fr., Apr. 23, 1996, S. TREATY DOC. NO. 105-13 (1997) (the "1996 Treaty"), as amended by the Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition Between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty Between the United States of America and France signed April 23, 1996, U.S.-Fr., Sept. 30, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Instrument") are attached to the Complaint. ECF No. 2-1 at 8-65.

the Government of France – as well as the written submissions of the parties and the evidence and arguments presented at the extradition hearing. *See* Transcript of Proceedings, ECF No. 25. This matter is now ready for disposition.

## II.    **Extradition**

Generally, "extradition is a diplomatic process by which the United States adheres to its treaty obligations by sending an individual sought by the requesting state to be prosecuted in that state." *Martinez Santoyo v. Boyden*, 130 F.4th 784, 788 (9th Cir. 2025). The extradition process is set forth in federal law as well as the relevant treaty.

In this case, the Extradition Treaty between the United States and France provides a mutual agreement between the two nations to extradite fugitives who are charged with crimes in one and subsequently found within the territory of the other. ECF No. 2-1 at p.13. "With respect to extradition treaties specifically, the Supreme Court has made clear that such agreements 'should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.'" *Gomez v. United States,* 140 F.4th 49, 56 (2d Cir. 2025)(*citing Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933)).

Requests for extradition shall be done through diplomatic channels to the Department of State and be accompanied by documents specified in the treaty. Pursuant to the treaty in this case, the documents shall include the following: 1) information about the nationality, location, and identity of the person sought; 2) information about the facts and procedural history of the offense the person

allegedly committed; 3) the text of the provisions allegedly violated; 4) the text of the laws proscribing the punishment if convicted; and 5) a copy of the "warrant or order of arrest and such information as would justify the committal for the trial of the person if the offense had been committed in the United States."  ECF No. 2-1 at 20-21.  This documentary evidence proffered by the foreign government shall be admissible in evidence if it is properly authenticated and certified by the principal consular officer of the United States in that country.  18 U.S.C. § 3190.

Since France has filed criminal charges against Mr. Legkodymov, an individual found within the jurisdiction of the United States, which are punishable by imprisonment of more than one year, and since there is an extradition treaty between the United States and France, the authority of this Court is limited to whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge."  18 U.S.C. § 3184. If such a finding is made by this Court, it is then required to certify to the Secretary of State that extradition is appropriate.  This Court has no discretion in the matter because it is the executive branch, through the Secretary of State, that controls the ultimate decision on whether the charged individual should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186.  However, should this Court determine that "the offense charged is not within a treaty's terms or find an absence of probable cause, the magistrate cannot certify the matter to the Secretary of State for extradition." *United States v. Nolan*, 651 F. Supp. 2d 784 ,790 (N.D. Ill. 2009), *quoting Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981).

## III.    Discussion

As an initial matter, the Court has to determine whether it is authorized to conduct the extradition proceeding and whether it has jurisdiction over Mr. Legkodymov.  If so, this Court then considers several factors to determine whether it should certify the matter to the Secretary of State that he is extraditable.  They are 1) whether a valid treaty exists between the United States and France; 2) whether the treaty covers the offenses for which France seeks extradition; and 3) whether there is probable cause to support the complaint for extradition.  *Gomez*, 140 F.4th at 54; *see also* 18 U.S.C. § 3184.  The Court will address each of these factors in turn.

A.    <u>The Court's authority and jurisdiction:</u>

At the outset neither party alleged this Court lacked the authority to conduct the extradition proceeding nor that it lacked jurisdiction over Mr. Legkodymov.  In fact Mr. Legkodymov, through his counsel, conceded both and agreed that he was the person sought by French authorities at the extradition hearing.  The Court also finds it is authorized to conduct an extradition proceeding pursuant to 18 U.S.C. § 3184 as well as Local Civil Rule 72(A)(4).  Furthermore this Court finds it has jurisdiction over Mr. Legkodymov who was arrested in the Western District of Pennsylvania pursuant to Section 3184.

B.    <u>The Treaty</u>:

Mr. Legkodymov has not contested the existence of a treaty between the United States and France nor has he presented any evidence to the contrary.  ECF

No. 19 at 8.  In any event there are several documents which establish a valid treaty exists between the United States and France.

The first document is a Declaration of Stacy Hauf, an attorney advisor in the Office of the Legal Adviser for the Department of State, dated January 17, 2025. ECF No. 2-1 at 2-3.  In it, Attorney Hauf declares under penalty of perjury that her office has responsibility for extradition requests and she is charged with the extradition case of Mr. Legkodymov.  *Id.*  She also declares that a treaty has been in full force and effect between the United States and France since April 23, 1996 and the European Union since June 25, 2003.  *Id.*  Further, she declares that the Embassy of France submitted a request for the extradition of Mr. Legkodymov through diplomatic channels on December 20, 2024.  *Id.*  In other words, Attorney Hauf declared that the Extradition Treaty was in effect before, during, and after the time Mr. Legkodymov was charged by France.

The second document is a copy of the treaties between the United States and France and the United States and the European Union.  Both are attached to Attorney Hauf's Declaration and both are authenticated and further support her position.  *Id.* at 3, 8-66.

The third document is a copy of the request for the extradition of Mr. Legkodymov by the Embassy of France to the Department of State dated December 20, 2024, which likewise supports Attorney Hauf's declaration.  *Id.* at 4-5.

The Court finds it appropriate to defer to Attorney Hauf and the Department of State's determination here.  *See Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S.

7

176, 184-85 (1982); *U.S. ex rel. Saroop v. Garcia*, 109 F.3d 165, 170 (3d Cir. 1997). Therefore, in the absence of any evidence to the contrary, all three documents clearly establish the existence of a valid treaty exists between the United States and France.

      C.  <u>Extraditable Offenses</u>:

In her Declaration, Attorney Hauf states the offenses of criminal conspiracy to prepare a crime and money laundering are extraditable offenses under the treaty. ECF 2-1 at 2-3.  Indeed, Article 2 of the Treaty between the United States and France states that an *any* offense punishable "by deprivation of liberty for a maximum of at least one year" is extraditable as is a "conspiracy to commit" such an offense.  *Id.* at 13.  In seeming agreement with Attorney Hauf, Mr. Legkodymov conceded at the extradition hearing that, at minimum, the money laundering offense was an extraditable offense.[3]

Documents attached to the extradition request further support Attorney Hauf's declaration that both offenses are extraditable.  Specifically, they establish that Mr. Legkodymov is charged in France with a number of criminal offenses including, but not limited to, "money laundering" and two types of "conspiracy"

---

[3]     In the Memorandum of Law in Opposition to Extradition filed by Mr. Legkodymov he states that he "does disagree" with the assertion that the "French charges at issue here are 'extraditable offenses' under the Treaty."  ECF No. 19 at 8. In doing so, he seemingly concedes that the offenses themselves are extraditable offenses as they are "nothing more than a felony" and thus covered by the Treaty.  *Id.* But on the other hand Mr. Legkodymov goes on to state they are not extraditable offenses in that they do enable certification for two reasons: first, because there is "no evidence" to establish probable cause and second, because he has been convicted of these "same" offenses in the United States which makes these offenses non-extraditable.  As set forth in this section, the Court finds the offenses are extraditable offenses as defined under the Treaty.  The Court will address separately whether probable cause exists and what impact, if any, the "same offense" argument has on its decision to certify this matter for extradition.

offenses - namely "participation in a criminal conspiracy to prepare a crime" and "conspiracy to breach a state-operated automated personal data processing system, committed in an organized gang." *Id.* at 139-141. If convicted the documents establish he faces a maximum penalty in excess of one-year imprisonment and that the statute of limitations for them has not expired. *Id.* at 132-146. Therefore the Court finds the offenses charged are extraditable as they are covered by the Treaty between France and the United States.

The Court's inquiry does not, however, end there. In assessing whether the Treaty covers these offenses, the Court must also determine under the Treaty if "dual criminality" or "double criminality" exists. In other words, the Court must determine whether the conduct which Mr. Legkodymov has been charged in France would also be considered a criminal offense had it been charged under the laws in the United States. Such a determination does not, however, "require that the elements, purposes, or punishment for foreign offenses be identical to ours. Rather, it requires that the acts charged be proscribed in each nation." *United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir.1991) (citations omitted).

First, with respect to money laundering, Mr. Legkodymov is specifically charged by French authorities with aggravated money laundering. For that he is alleged to have facilitated, "by any means whatsoever, the false justification of the origin of the assets or income of the perpetrator of a crime or misdemeanor that has procured the latter a direct or indirect profit" which by five years' imprisonment,

subject to some exceptions.  *Id.* at 141-42.  The United States likewise criminalizes

laundering monetary instruments, 18 U.S.C. § 1956, which prohibits,

> Whoever, with the intent--(A) to promote the carrying on
> of specified unlawful activity;(B) to conceal or disguise the
> nature, location, source, ownership, or control of property
> believed to be the proceeds of specified unlawful activity;
> or(C) to avoid a transaction reporting requirement under
> State or Federal law, conducts or attempts to conduct a
> financial transaction involving property represented to be
> the proceeds of specified unlawful activity, or property
> used to conduct or facilitate specified unlawful activity,
> shall be fined under this title or imprisoned for not more
> than 20 years, or both."

Although not required, both statutes prohibit near-identical conduct.  In any

event, it is clear that both France and the United States have laws which

criminalize money laundering and therefore dual criminality exists as to this

charge.

Second, with respect to conspiracy, Mr. Legkodymov is charged by French

authorities with participation in a criminal conspiracy.  For that he is alleged as

part of a "group formed or agreement established with a view to the preparation,

characterized by one or more materials facts, of one or more felonies or

misdemeanours punishable by at least five years imprisonment constitutes a

criminal conspiracy."  *Id.* at 139.  The United States likewise criminalizes

conspiracy to commit offense or to defraud United States, 18 U.S.C. § 371, which

prohibits where,

> two or more persons conspire either to commit any offense
> against the United States, or to defraud the United
> States, or any agency thereof in any manner or for any
> purpose, and one or more of such persons do any act to

> effect the object of the conspiracy, each shall be fined
> under this title or imprisoned not more than five years, or
> both.

As with money laundering, and although not required, both statutes prohibit near-identical conduct. In any event, it is clear that both France and the United States have laws that criminalize the offense of conspiracy and therefore dual criminality exists as to this charge as well.[4]

Given the above, the Court finds the Treaty covers the offenses for which Mr. Legkodymov faces prosecution in France which are also criminal offenses had the matter been charged in the United States. Therefore, the offenses charged are extraditable offenses.

D. <u>Probable Cause</u>:

In an extradition proceeding, the government bears the burden of demonstrating probable cause, meaning a reasonable belief, that the Respondent is guilty of the extraditable offenses charged in France. *Sidali v. I.N.S.* 107 F.3d 191, 199 (3d Cir. 1997).

In determining probable cause in the extradition context, neither the Federal Rules of Criminal Procedure nor Federal Rules of Evidence apply. *In re Extradition of Aquino*, 697 F. Supp. 2d 586, 597 (D.N.J. 2010); Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3). As such, hearsay evidence is admissible. *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006).

---

[4]    In an apparent concession, neither party challenged dual-criminality as to either money laundering or conspiracy.

The individual whose extradition is sought has limited evidentiary rights. He or she has no right to cross-examine witnesses, and generally may present only "evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) (citation and quotation marks omitted). Thus, an individual facing extradition is limited to presenting "'reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.'" *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) (citation omitted).

Mr. Legkodymov contests probable cause and argues the information provided does not establish that he committed the offenses charged. ECF No. 19 at 2, 19-21. The crux of Mr. Legkodymov's argument is that the allegations from France are merely "conclusory statements." *Id.* at 20. Although Mr. Legkodymov does not specifically state why there is no probable cause as to either the money laundering or conspiracy counts, he generally asserts that "there is not enough evidence to suggest he is guilty of the crimes charged." *Id.* at 20. He argues the French government's conclusion that he had "'clear knowledge' of Bitzlato being associated with the 'dark web'" is refuted by his communications which make unclear whether he had actual knowledge the platform was being used to conduct illicit transactions. *Id.* at 20-21. Therefore, Mr. Legkodymov asks that the extradition request be denied. Accordingly, the evidence related to both the money

laundering and conspiracy charges will be reviewed for a probable cause determination.

At the extradition hearing, neither side presented any witnesses. Instead, the Government presented a summary of the evidence it had previously admitted in written form. Namely, that French authorities initiated an investigation into crypto asset laundering services in 2022. ECF No. 18 at 3. During the course of its investigation it was learned that one of those services, "Bitzlato," was a Russian platform "that facilitated exchanges of crypto assets (including Bitcoin, Ethereum, Litecoin, Bitcoin Cash, Dash, Dogecoin and Tether) into Russian rubles, with an estimated transaction volume of over $1 billion since 2019 … [which] allowed users to sell and buy cryptocurrencies directly between themselves without going through a central authority to facilitate transactions." *Id.* The platform permitted the use of bots which preserved user anonymity, made funds untraceable, and was therefore attractive to criminals in the movement of their proceeds. *Id.* at 4. The platform offered its services in many countries including France. *Id.* at 3. Additionally, the platform used 56 servers from a host located in France to conduct its business. *Id.* at 4.

The Government also presented evidence that one of Bitzlato's founders was Mr. Legkodymov who referred to himself as the platform's "CEO." *Id.* at 3. Chat logs demonstrated that Mr. Legkodymov knew part of the platform's profits were derived from those involved in drug trafficking and other crime and that they discussed charging criminals particular fees or commissions for use of the Bitzlato

13

service. *Id.* at 4-5. Additionally, the chat logs demonstrated that he knew a large percentage of the proceeds from his service were used on a dark web market – estimated at $171 million and $225 million respectively - to engage in criminal activity. *Id.* at 6. For example, he was informed by his compliance department that as many as 27,000 users of the platform had attempted to transfer money to "dirty crypto currency addresses" in the past six months. Despite Mr. Legkodymov's awareness of the illicit manner in which his platform was used, and despite his discussions with colleagues to exclude criminals from Bitzlato, they took no action to stop it. *Id.* at 7. Instead they retained the clientele and laundered the proceeds.

In light of the evidence presented, the Court is not persuaded by Mr. Legkodymov's arguments that the information is insufficient and conclusory. Rather, the evidence establishes a reasonable belief that illegal proceeds were being funneled through Mr. Legkodymov's platform in an anonymous and unchecked manner, that he knew his platform was being used in such a manner by criminals to hide their illegal proceeds, and that he and his colleagues discussed terminating their access but did not and, instead, kept laundering the funds on devices (at least some of which were) located in France. The standard here is probable cause and the information provided to the Court, 23 pages of documentary allegations made by French prosecutors and a summary by the Government, is more than sufficient to satisfy this relatively low evidentiary burden. ECF No. 2-1 at 96-119.

Mr. Legkodymov separately argued at the extradition hearing that the Government's evidence lacked probable cause due to a jurisdictional defect as there

14

is no evidence of "a single dollar that's traceable to France." *See* Transcript of Proceedings, ECF No. 25 at 21.  The Government countered that Bitzlato servers were located in France and thus jurisdiction for the criminal offenses is proper there.  The Court finds the Government's argument persuasive as the act of money laundering charged is alleged to have occurred electronically.  Whether the movement of criminal proceeds on Bitzlato actually occurred on the servers in France is not for this Court to determine.  Rather, it is for this Court to determine only if there is a reasonable belief that it did.  This Court finds there is and thus determines that, in light of the evidence presented, there is probable cause Mr. Legkodymov committed both money laundering and conspiracy as charged by France.[5]

E. "Same Offense":

Mr. Legkodymov next argues he is not extraditable as he has already been convicted in the United States for the "same conduct and crimes" for which he is now charged in France.  ECF No. 19 at 1-2.  In a sense, Mr. Legkodymov advances a double-jeopardy-like argument, referred to as *Non Bis Idem,* which he submits would violate the terms of the Treaty.  *Id.*

The evidence presented establishes that Mr. Legkodymov was convicted in the United States District Court for the Eastern District of New York on one count of operation of an unlicensed money services business, in violation of 18 U.S.C. §

---

[5]      Mr. Legkodymov did not concede probable cause at the extradition hearing.  Although the Court has found probable cause, it notes this is not a finding of guilt.  Far from it.  Rather that determination shall be made "in the courts of the demanding country."  *Sainez v. Venables,* 588 F.3d 713, 717 (9th Cir. 2009) (quoting *Valencia v. Limbs*, 655 F.2d 195, 198 (9th Cir. 1981).

1960(b)(1)(C). ECF No. 23 at 1.  Mr. Legkodymov submits that this conviction, which like the charges in France is related to his involvement with Bitzlato, means he cannot be extradited under the Treaty.  ECF No. 19 at 9.  In support of his argument he cites Article 8 of the Treaty which states, "Extradition shall not be granted when the person sought has been finally convicted or acquitted in the Requested State for the offense for which extradition is requested."  ECF No. 2-1 at 19.

The Government correctly argues that the treaty prohibits extradition where the individual has been convicted of the *same* offense, which is not the case here. ECF No. 23 at 5.  In this respect, Mr. Legkodymov was convicted in the United States for managing a business which transmitted funds known to be from criminal proceeds that affected interstate or foreign commerce.  18 U.S.C. § 9160(b)(1)(C). By comparison he is charged in France with aggravated money laundering which does not require one to manage a business, rather it prohibits "false justification of the origin of the assets or income of the perpetrator of a crime or misdemeanor that has procured the latter a direct or indirect profit."  ECF No. 2-1 at 141-42. Additionally, he is charged in France with participation in a criminal conspiracy which requires a "group" as well as an "agreement" neither of which are elements of the offense of conviction in the United States.  *Id.* at 139.  Put simply, the elements of the offense of conviction in the United States are distinct from those required for conviction of the offenses charged in France.  As found in the Treaty, the term "'offense' refers to the definition of the crime itself" meaning its elements, which is

"the most natural reading" of this term. *Zhenli Ye Gon v. Holt*, 774 F.3d 207, 215 (4th Cir. 2014); *Rana v. Jenkins,* 113 F.4th 1058, 1064 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1128 (2025) (the Treaty between the United States and France used the term "offense" intentionally which "denotes a charged crime defined by its elements"). Having adopted the same elements approach, and given the differences between the elements in the offense of conviction in the United States and the pending offenses in France, extradition is permitted under the Treaty.[6]

   F.  <u>Violation of non-prosecution agreement</u>:

Lastly, Mr. Legkodymov argues that his extradition would violate the principles of an implicit non-prosecution agreement he had with the Government of France in exchange for his cooperation. ECF No. 19 at 21-22. A central flaw to this argument, save for the fact that it is not contemplated by the Treaty nor is there any authority to deny extradition on this basis, is that there apparently was no agreement. According to evidence presented by the Government, namely a letter from the First Deputy Prosecutor of the Public Prosecutor's Office in Paris, no such agreement was made. ECF No. 23-1. Furthermore, the transcript of the proffer session between Mr. Legkodymov and prosecutors likewise fails to establish the

---

[6]      Based on a Circuit split, Mr. Legkodymov also argues that the Court can consider the "acts" of conviction in United States and those acts charged in France as being so similar that extradition is prohibited under the Treaty. ECF No. 19 at 14-19. The Court begins its analysis with the language of the Treaty and does not view it in the same manner as Mr. Legkodymov. Article 8 of the Treaty differentiates between the use of the term "offense" and the term "act." ECF No. 2-1 at 19. The Treaty explicitly makes clear that extradition shall not be granted where one has been "convicted … in the Requested State … for the *offense* for which extradition is requested." *Id*. The Treaty does not state the same for "acts." *Id*. Thus it is the offense, not the act, which governs. Given the Court's previous finding that extradition is permitted under the treaty where the elements of the "offense" of conviction vary from the extraditable offense, extradition is authorized.

existence of such an agreement.  ECF 19-1.  Given the dearth of evidentiary and legal support, the existence of a non-prosecution agreement is not a basis to deny certification for extradition.

## IV.    Certification

Pursuant to 18 U.S.C. § 3184, the Court certifies to the United States Secretary of State that Anatolii Legkodymov has been charged with the crimes of aggravated money laundering and conspiracy, that these crimes are extraditable offenses pursuant to the Extradition Treaty between the United States and the Government of France, and that sufficient evidence has been presented to sustain the charges under the provisions of the Extradition Treaty.  Therefore, extradition is warranted.

Date: September 23, 2025          BY THE COURT:


                                  s/Christopher B. Brown
                                  Christopher B. Brown
                                  United States Magistrate Judge

18